**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT A. SCHLOTZHAUER,<br><br>Plaintiff, | ) | |
| vs. | ) | Case No. 25-00171-CV-W-FJG |
| TODD BLANCHE[1], the Acting Attorney General of the United States, et al.,<br><br>Defendants | ) | |

# ORDER

Currently pending before the Court is plaintiff's Motion for Summary Judgment (Doc. # 15) and defendants' Cross Motion for Summary Judgment (Doc. # 19).

## I. BACKGROUND

Plaintiff is an 85-year-old citizen of the United States who resides in Jackson County, Missouri. On December 3, 2008, in the case of United States of America v. Robert A. Schlotzhauer, Case No. 4:06-CR-00091-GAF, plaintiff was convicted of wire fraud and money laundering in the United States District Court for the Western District of Missouri. These crimes are classified as felonies ranging up to 20 years' incarceration. The Second Superseding Indictment in Schlotzhauer's criminal case, charged Schlotzhauer, Falcon Helicopter, Inc., and Lee's Summit Turbine, LLC with mail fraud, false statements, aircraft parts fraud, and making a false statement to a bank. The factual basis for Schlotzhauer's guilty plea included sending a false e-mail representing that a

[1] Pursuant to Fed.R.Civ.P. 25(d), as Todd Blanche is the Acting Attorney General, he is automatically substituted for Pamela Bondi.

helicopter compressor was involved in a hard landing after running out of gas, when in fact plaintiff knew that the helicopter crashed and had been submerged in the ocean for the purpose of fraudulently obtaining the $25,000 purchase price. Plaintiff additionally made false statements to conceal ownership of the unlawful proceeds. Plaintiff was sentenced  to a term of 2 years of probation and directed not to possess a firearm, destructive device, or any other dangerous weapon. Special conditions were imposed of Home Confinement for 12 months, and liquidation of any and all assets of Falcon Helicopter, Inc., and Lee's Summit Turbine, LLC, involved in the maintenance, repair or rebuilding of aircraft, after sentencing. The parties further agreed that plaintiff should refrain from applying for reinstatement of any FAA certificate and that would be a violation of his probation to: (1) so reapply for any FAA certification; or (2) to engage in the business of the maintenance, repair or rebuilding of any aircraft. He was ordered to pay restitution to Rainbow Air of $63,854.00 and a fine of $550,000. Plaintiff violated this special condition of his probation by failing to liquidate any and all assets of Falcon Helicopter, Inc. and Lee's Summit Turbine, LLC, surrendering all repair related FAA certificates, and refraining from any involvement in the business of maintaining, repairing, or rebuilding aircraft after sentencing and was committed to the custody of the United States Bureau of Prisons for a total term of 10 months. Plaintiff has no convictions other than those mentioned above. Plaintiff previously held a Type 01 license issued by ATF to deal in firearms. Plaintiff is barred from possessing or purchasing firearms pursuant to 18 U.S.C. § 922(g).

In his one-count Complaint, plaintiff asserts an individualized as-applied claim to keep and bear arms under the Second Amendment.  Plaintiff states that he is a law

abiding citizen who has no history of violent behavior and his possession of firearms would not be contrary to the public interest. He states that the Framers of the Constitution never intended to permanently dispossess an individual of firearms for non-violent convictions such as those at issue. Based on the non-violent nature of his felony convictions, the passage of time since his convictions and his law abiding record over the last several years and the ATF licenses he previously held, plaintiff states it is unconstitutional to apply against him, personally, the prohibition on the possession of firearms contained in 18 U.S.C. § 922(g)(1). In his prayer for relief, plaintiff asks for a declaration that § 922(g)(1) cannot be applied against him on account of his previous convictions, a declaration that application of § 922(g)(1) against him violates the Second Amendment, an order permanently enjoining defendants from enforcing § 922(g)(1) against him on the basis of his convictions and directing defendants to issue him a unique personal identification number under the National Instant Background Check System so that he may purchase firearms. Plaintiff also requests a declaration that his convictions do not require him to acknowledge a disabling conviction when purchasing firearms, the costs of suit and his attorney fees.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984).

## III. DISCUSSION

### A. Regulatory History and Eighth Circuit Precedent

The first prohibition on firearms was the Federal Firearms Act enacted in 1938. The statute applied only to person convicted of a "crime of violence." In 1961, Congress expanded the prohibition by replacing the "crime of violence" element with "crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1) prohibits the possession of firearms by any person convicted of "a crime punishable by imprisonment for a term exceeding one year." Section 922(d)(1) prohibits anyone from transferring firearms or ammunition to anyone whom the transferor has reason to know was convicted of "a crime punishable by imprisonment for a term exceeding one year." All firearms purchasers within the United States who do not possess a Federal Firearms License, must complete "Form 4473, Firearms Transaction Record Part 1 – Over-The-

Counter," in order to purchase a firearm. 27 C.F.R. § 478.124. Question 21(d) on the Form asks:

> Have you ever been convicted in any court, including a military court, of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?

Firearms Transaction Record, ATF Form 4473.[2] Firearm dealers are instructed not to sell guns to individuals who answer yes to this question.

In United States v. Jackson, 110 F.4th 1120 (8th Cir. 2024), the defendant argued that the felon-in-possession statute, 18 U.S.C. § 922(g)(1) was unconstitutional as applied to him. The Eighth Circuit rejected this argument, stating that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." Id. at 1125. The Court stated that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. . . . [and] Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." Id. at 1129.

**B. Is the Eighth Circuit decision in Jackson Inconsistent with Supreme Court Precedent?**

Plaintiff argues that Jackson conflicts with the Supreme Court's decisions in N.Y. State Rifle & Pistol Ass'n. v. Bruen, 597 U.S.1, 24-25, 142 S.Ct 2111, 213 L.Ed.2d 387 (2002) and United States v. Rahimi, 602 U.S. 680, 691-92, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024) in three ways: 1) it substitutes a categorical rule for the government's required historical showing; 2) it collapses "law-abiding" language into a dispositive

[2] Form is available at: https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download (last visited June 18, 2026).

carve-out and 3) it is in tension with Rahimi's principle that disarmament tracks demonstrated dangerousness, not mere status. Plaintiff also notes that courts in the Third, Seventh and Ninth Circuits take approaches that are more consistent with Rahimi and Bruen and which are inconsistent with the Eighth Circuit's categorical "no felony-by-felony" rule.

In opposition, the Government notes that the Jackson court applied the two-factor inquiry set out in Bruen, asking "first, whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and second, whether that regulatory burden is comparably justified." Id. at 3. The Government also notes that even though the Third and Seventh Circuits appear to embrace a more individualized approach, both the Fourth and the Ninth Circuits follow the Eighth Circuit's approach.[3]

In Bruen, the Court stated:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." Konigsberg, 366 U.S. at 50, n. 10, 81 S.Ct. 997.

New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 24, 142 S. Ct. 2111, 2129–30, 213 L. Ed. 2d 387 (2022). In Rahimi, the Court stated:

> As we explained in Bruen, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. 597 U.S. at 26–31, 142 S.Ct. 2111. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern

[3] See United States v. Hunt, 123 F.4th 697 (4th Cir. 2024); United States v. Duarte, 137 F.4th 743 (9th Cir. 2025).

circumstances." Id., at 29, 142 S.Ct. 2111.

United States v. Rahimi, 602 U.S. 680, 692, 144 S. Ct. 1889, 1898, 219 L. Ed. 2d 351 (2024). The Court in Rahami concluded that "Section 922(g)(8) survives Rahimi's facial challenge. Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others. Section 922(g)(8) can be applied lawfully to Rahimi." Id. at 700.

In Jackson, the Eighth Circuit recounted the historical tradition of restrictions on the possession of firearms, noting

> [r]estrictions on the possession of firearms date to England in the late 1600s, when the government disarmed non-Anglican Protestants who refused to participate in the Church of England . . .Parliament later forbade ownership of firearms by Catholics who refused to renounce their faith. . . .In colonial America, legislatures prohibited Native Americans from owning firearms. . . .Religious minorities, such as Catholics in Maryland, Virginia, and Pennsylvania, were subject to disarmament . . . In the era of the Revolutionary War, the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina and New Jersey prohibited possession of firearms by people who refused to declare an oath of loyalty. . . . Early legislatures also ordered forfeiture of firearms by persons who committed non-violent hunting offenses.
>
> The historical record suggests that legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms, not merely to address a person's demonstrated propensity for violence. . . . On this view, for which there is considerable support in the historical record, Congress did not violate Jackson's rights by enacting § 922(g)(1). He is not a law-abiding citizen, and history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society.

Id. at 1126-27. The Court concluded that "Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of

firearms by felons, we conclude that the statute is constitutional as applied to Jackson." Id. at 1129.

**C. Is § 922 Unconstitutional as Applied to Plaintiff?**

Plaintiff contends that the prohibition on felons contained in § 922 is unconstitutional as applied to him. Plaintiff argues that his convictions for wire fraud and money laundering are not substantially related to the general risk of gun violence the federal statutes seek to prevent. Plaintiff states the fact that the laws in question treat him the same as a violent felon demonstrates there is no fit between the objectives and the ends. However, plaintiff acknowledges that the Eighth Circuit's decision in Jackson forecloses an as-applied analysis. Nonetheless, plaintiff states that if the Court agrees with Jackson's categorical approach, then plaintiff's as-applied challenge is preserved for appeal.

The Government notes that because plaintiff was convicted of the felonies of wire fraud and money laundering, he belongs to the category of individuals "who deviated from legal norms" and who have historically been disarmed by legislatures "to address a danger of misuse." Jackson, 110 F.4th at 1127. Thus, the Government states plaintiff's "as applied" challenge fails.

**D. Binding Precedent**

The Government notes that plaintiff is asking the Court to ignore binding Eighth Circuit precedent. However, "[d]istrict courts in the Eighth Circuit – like this one – are duty bound to follow precedential decisions of the Eighth Circuit Court of Appeals." Barakat v. Frontier Justice KCMO, LLC, Case No. 4:21-cv-00934-RK, 2022 WL 3269942 at *3 (W.D.Mo. Aug. 10, 2022). Additionally, the Government notes that courts

in this circuit have already confronted and rejected this argument as it relates to the Gun Control Act and the Second Amendment. "Post-Jackson, the Eighth Circuit has consistently rejected both facial and as-applied challenges to the constitutionality of section 922(g)(1)." United States v. Mangol, Case No. 24-00037-01-CR-W-SRB, 2025 WL 1231894 at *3 (W.D.Mo. Apr. 11, 2025). See also United States v. Holmes, Case No. 4:24-cr-00129-JMD, 2025 WL 2996493 at *1 (E.D.Mo. Oct. 23, 2025); United States v. Smith, Case No. 24-00260-01-CR-W-BP, 2025 WL 3767829 at *3 (W.D.Mo. Dec. 11, 2025); United States v. Williams, Case No. 24-1582,131 F.4th 652, 655 (8th Cir. 2025).

Plaintiff argues that Jackson must be read in light of Rahimi, meaning that courts must evaluate the specific justification for disarmament. Plaintiff also states that Jackson does not control the facts of this case because plaintiff's circumstances are distinct – he was convicted of non-violent offenses, he has had decades worth of lawful conduct and there is no evidence of dangerousness. Plaintiff is incorrect, Jackson does control the facts of this case. The plaintiff in Jackson made the same argument that plaintiff is making in this case – Section 922(g)(1) is unconstitutional as applied to him because his offenses were "non-violent" and do not show that he is more dangerous than the typical person. But, the Eighth Circuit rejected this argument stating, "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." Id. at 1125. Plaintiff in this case is asking the Court to ignore binding Eighth Circuit precedent. But, this Court cannot depart from binding precedent "until overruled by [the] court en banc, by the Supreme Court, or by Congress." M.M. ex rel. L.R. v. Special Sch. Dist. No. 1, 512 F.3d 455, 459 (8th Cir. 2008). As noted in Mangol, "[t]his Court is required by apply

Eighth Circuit caselaw, which has consistently held section 922(g)(1) constitutional both facially and as-applied." Id. at *4.

## IV. CONCLUSION

Accordingly for the reasons stated above, the Court hereby **DENIES** plaintiff's Motion for Summary Judgment (Doc. # 15) and **GRANTS** defendants' Cross Motion for Summary Judgment (Doc. # 19).

Date: June 24, 2026
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge